1                                                      Honorable Robert S Lasnik

2

3

4                                                ____FILED____ENTERED
                                                 ____LODGED____RECEIVED

5

6                                                MAY 1 0 2001    PM

7                                                     AT SEATTLE
                                            CLERK U S DISTRICT COURT
                                      BY  WESTERN DISTRICT OF WASHINGTON

8                UNITED STATES DISTRICT COURT                          DEPUTY
              WESTERN DISTRICT OF WASHINGTON
9                       AT SEATTLE

10   JENNIFER ERICKSON,

11              Plaintiff,                    Civil No  C00-1213L

12        v                                  DEFENDANT'S REPLY ON CROSS-
                                             MOTION FOR SUMMARY JUDGMENT
13   BARTELL DRUG COMPANY,
                                             **Oral Argument: Wednesday,**
14              Defendant                    **May 30, 2001 at 1:30 p.m.**

15

16                        **I. INTRODUCTION**

17        Summary judgment on both plaintiff's claims is appropriate because plaintiff fails

18   to demonstrate either disparate treatment or disparate impact in violation of the Pregnancy

19   Discrimination Act ("PDA") or Title VII

20        There are several inconsistencies in plaintiff's current position   As plaintiff has

21   contended since Fall 2000, and as she stated in her opening memorandum at page 6, "in this case

22   there are no material facts in dispute " After receiving defendant's cross-motion, plaintiff now

23   (inconsistently) suggests there are material facts in dispute on the second claim alleging disparate

24   impact.  Defendant contends plaintiff's initial statement of "no material facts in dispute" is

25   correct for both claims

26



CV 00-01213 #00000070



ORIGINAL

MILLER NASH LLP
ATTORNEYS AND COUNSELORS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET  SEATTLE  WASHINGTON  98101 2352

1          Plaintiff also suggests her deposition testimony cannot be relied upon by

2  defendant in its motion. But a defendant is entitled to rely upon a plaintiff's deposition testimony

3  in its motion for summary judgment. <u>Foster v. Arcata Associates</u>, 772 F 2d 1453, 1462 (9th Cir

4  1985)

5          Another inconsistency regarding plaintiff is her separate motion to strike from

6  consideration Exhibit 18 to her deposition (describing reasons why many employers do not cover

7  prescription contraceptives). Defendant has asked plaintiff to withdraw her motion to strike

8  because Exhibit 18 is merely a quote from page 8 of Exhibit B to Dr. Easterling's declaration

9  (Exhibit 1 to plaintiff's opposition to Bartell's cross-motion), the article on contraception by

10  William M Mercer

11          To accept plaintiff's interpretation of the PDA would be to expand the coverage of

12  the PDA to make it apply to every medical condition related to female reproduction  if the state

13  of not being pregnant is related to pregnancy, so are such things as infertility, etc   Under

14  plaintiff's interpretation, whenever an employer provides any type of preventive health care at all

15  (e.g., "routine well baby care," Dep Ex. 10), it must cover every condition related to female

16  reproduction because each is potentially related to a woman being pregnant at some point during

17  her life. Such an expansive result could not have been intended by Congress   The statutory

18  language and legislative history make clear that the PDA does not encompass pre-pregnancy

19  medical conditions or the state of not being pregnant.

20          Plaintiff's reliance on <u>International Union, UAW v  Johnson Controls, Inc.</u>,

21  499 U.S. 187, 111 S. Ct 1196, 113 L. Ed. 2d 158 (1991), does not alter that conclusion. <u>Johnson</u>

22  <u>Controls</u> concerned a job policy that explicitly differentiated between women employees and

23  men employees, treating all women employees as "potentially pregnant" and at risk from lead

24  exposure, but ignoring the fact that all men were potentially fathers and also at risk from lead

25  exposure. It was not concerned with (a) fringe benefits or (b) the state of nonpregnancy, but only

26  with the hurdle to employment created by the policy.

DEFENDANT'S REPLY ON CROSS-MOTION FOR
SUMMARY JUDGMENT - 2
SEADOCS 102414 1

MILLER NASH LLP
ATTORNEYS AND COUNSELORS AT LAW
TELEPHONE (206) 622 8484
4400 TWO UNION SQUARE
601 UNION STREET  SEATTLE  WASHINGTON 98101 2352

1       Even assuming that nonpregnancy is a medical condition related to pregnancy and

2   child birth, then there is still no discrimination because Bartell's health care plans provide the

3   same coverage for all family planning or preconception conditions to all employees and their

4   dependents.   Newport News Shipbuilding & Dry Dock Co  v  EEOC, 462 U.S. 669, 685,

5   103 S  Ct. 2622, 77 L. Ed  2d 89, 103 (1983), deals with fringe benefits, rather than a job hurdle,

6   holding that, under the PDA, an employer must treat spouses of male employees the same as

7   female employees with regard to pregnancy benefits, which is precisely what Bartell's plan does

8                    **II.  STATEMENT OF UNDISPUTED FACTS**

9   **A.     Plaintiff's testimony constitutes "undisputed facts" for this motion.**

10      Plaintiff stated in her initial brief that there were "no material facts in dispute "  In

11  Bartell's original cross-motion, the facts recited were solely from plaintiff's own deposition

12  testimony and therefore (for the purposes of this motion) are undisputed   Plaintiff's suggestion

13  the Court cannot rely on her sworn testimony should be ignored   See Foster v  Arcata, supra.

14  **B.     The following facts are also undisputed:**

15      1.      Nowhere in any legislative history, or in the 1978 report of Congressional

16  hearings or testimony, or any contemporaneous writing, is there any mention of the concept that

17  the PDA was intended to cover prescription contraceptives simply because an employer's benefit

18  plan covers "routine well baby care, routine physical exams, routine eye and hearing exams, and

19  office calls and lab services for cancer screenings." See plaintiff's dep. Ex. 10, p  25.  This is true

20  even though prescription contraceptives had been in common use since the late 1960s.  The

21  legislative history does reflect detailed consideration of the following, however·  disabilities

22  related to pregnancy, miscarriage, abortion, or childbirth, and recovery therefrom; loss of

23  seniority due to absence from work for childbirth; refusal to hire/termination of pregnant women

24  or women who had an abortion; mandatory leave for pregnant women; reinstatement rights for

25  women who gave birth; credit for accrued retirement while on leave due to birth; costs per week

26  of providing coverage as demanded by PDA, and numerous other details.

DEFENDANT'S REPLY ON CROSS-MOTION FOR
SUMMARY JUDGMENT - 3
SEADOCS 102414  1

1       Senators Reid and Snowe began introducing their Equity in Prescription and
2  Contraception Coverage Act in 1997.  Cappio Decl. at Exhibit 4 (S375).  Federal Health Plans –
3  the largest employer-sponsored health insurance plan in the country – were not required to cover
4  prescription contraceptives until three years ago  Id., at S376.

5       It is undisputed that Bartell's separate health care and prescription benefit
6  plans *exclude* coverage for the broad category of *family planning*.  i e , *in vitro* fertilization,
7  sterilization, artificial insemination, embryo transfer, fertility drugs, treatment for sexual
8  dysfunction or impotence, and contraceptive drugs and devices for both employees and their
9  dependents. That is, Bartell's benefit plans do not cover *any* medical treatment for either male or
10 female employees, or their dependents, enabling or preventing pregnancy

11      Plaintiff admits she has not been denied a job, not demoted, not denied a
12 promotion, and has not lost her job because Bartell's prescription plan does not cover
13 prescription contraceptives.  There is no evidence to the contrary for any other employee
14 Nothing in plaintiff's motion would help female employees obtain or retain any job.

15      There is no evidence that any female employee of Bartell did not obtain
16 prescription contraceptives when she wanted them, or that she became pregnant because
17 contraceptives were not covered by Bartell's self-funded prescription drug plan [1]

18                          **III. ISSUES**

19      Plaintiff's final brief makes it clear that her focus is not on employment
20 discrimination, but rather an attempt to use this court to mandate that insurance policies cover
21 prescription contraceptives – this is a policy decision more appropriately addressed by Congress.
22 Throughout plaintiff's brief she refers to the alleged disparate impact on "women" versus "men"
23 of pregnancy, having children, purchasing contraceptives, etc. – *not whether there is a disparate*
24 *impact on female employees compared to male employees by the benefit plan excluding*

25 _____
26 [1]  Plaintiff's expert cites some studies that hypothesize that some women *may* not get
contraceptives because of lack of insurance coverage, but this is simply speculation.

DEFENDANT'S REPLY ON CROSS-MOTION FOR
SUMMARY JUDGMENT - 4
SEADOCS 102414 1

MILLER NASH LLP
ATTORNEYS AND COUNSELORS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET  SEATTLE  WASHINGTON 98101 2352

1   prescription contraceptives from its coverage   Nothing in any of the materials plaintiff presents

2   demonstrates a concern about employment discrimination.   Rather, the concern is about all

3   women's health

4            Issues the court should consider include

5            1        Whether the condition of nonpregnancy is a medical condition related to

6   pregnancy and child birth

7            2.       Whether an employer's fringe benefit plan that excludes coverage of all

8   types of treatment or action to enable or prevent conception violates the PDA because one subset

9   of that exclusion concerns only women.

10           3        Whether an employer's prescription benefit policy that excludes coverage

11  of prescription contraceptives for both its female employees *and* the female dependents of its

12  male employees violates the PDA

13           4.       Whether an employer's health care plan that covers preventive treatment

14  for diseases and disorders but not healthful conditions violates the PDA because it does not cover

15  treatment that prevents pregnancy or conception.

16                              **IV. DISCUSSION**

17  **A.    The PDA pertains to medical conditions related to *pregnancy* and *childbirth*, not to
        every condition related to female reproduction.**

18           The 1978 Pregnancy Discrimination Act ("PDA") prohibits discrimination on the

19  basis of "pregnancy, childbirth, or related medical conditions "   It is important to note that the act

20  refers to *pregnancy and childbirth*, and not to any condition related to women's ability to

21  reproduce. A close examination of plaintiff's argument, however, demonstrates that she really is

22  seeking coverage for conditions broadly related to female reproduction, and not based on the

23  condition of pregnancy or childbirth.

24           It undisputed that prescription contraceptives are a pre-pregnancy treatment,

25  rather than treatment for a pregnancy or child birth, or post-pregnancy, or post-childbirth. If, as

26

DEFENDANT'S REPLY ON CROSS-MOTION FOR
SUMMARY JUDGMENT - 5
SEADOCS 102414 1

1   plaintiff argues, remaining nonpregnant should be treated the same under the PDA as being

2   pregnant because only women can be pregnant, then it would logically follow that anything

3   related to female reproduction would be covered as a "related medical condition" under the PDA

4   because, in the reproductive arena, only women get pregnant

5           For example, under plaintiff's interpretation of the statute, being infertile would be

6   a "related medical condition" because it keeps a woman from becoming pregnant  Thus, if that

7   were true, an employer's benefit package that excludes coverage of *both* male and female

8   infertility treatment would still be discriminatory on the basis of sex because only females can

9   get pregnant  excluding coverage of female infertility treatments would *per se* violate the PDA

10  if the employer provides any health coverage at all that might use prescription drug care, surgery,

11  screening, etc   That this is an accurate extension of plaintiff's argument can be seen by the

12  statements in her second brief·  plaintiffs argue that <u>Saks v. Franklin Covey</u>, 117 F. Supp 2d 318

13  (S D N Y  2000), correctly held that infertility was a "related medical condition" under the PDA,

14  but incorrectly held that an employer's benefits plan that excluded infertility treatments for both

15  males and females was nondiscriminatory. *Plaintiff's Reply memo at 8, n 6*  But this position

16  has been rejected by other courts besides <u>Saks</u>.  See <u>Krause v. Iowa Methodist Med. Center</u>,

17  95 F 3d 674 (8th Cir. 1996) (infertility is not a medical condition related to pregnancy and is not

18  covered by the PDA).

19          The PDA pertains to pregnancy, child birth, and conditions resulting therefrom,

20  not to any pre-pregnancy conditions, including the condition of nonpregnancy.  If Congress had

21  intended to cover anything other than pregnancy, child birth, and the medical conditions directly

22  resulting from pregnancy or childbirth, it would have so indicated in the statute or, at the very

23  least, in its discussion of the bill.

24

25

26

DEFENDANT'S REPLY ON CROSS-MOTION FOR
SUMMARY JUDGMENT - 6
SEADOCS 102414  1

MILLER NASH LLP
ATTORNEYS AND COUNSELORS AT LAW
TELEPHONE (206) 622 8484
4400 TWO UNION SQUARE
601 UNION STREET  SEATTLE  WASHINGTON 98101-2352

**B.**   **There is _no_ evidence that Congress intended the PDA to cover prescription contraceptives.**

Despite citing numerous Congressional statements that detailed many areas of concern discussed by Congress in passage of the PDA, plaintiff has not cited a single contemporary statement that even suggests Congress intended the prohibition on pregnancy and childbirth discrimination to also include prescription contraceptives to keep a woman in the state of being nonpregnant.  To the contrary, all the contemporary discussions of the fringe benefits section of the PDA dealt with coverage for conditions arising _directly_ from pregnancy and childbirth, i e , post-conception.

Even the legislative sources cited by plaintiff strongly indicate that Congress did _not_ consider the PDA to cover prescription contraceptives:  Senators Reid and Snowe began introducing legislation in 1997 that would mandate the coverage of contraceptives in employer provided insurance plans   If Title VII and the PDA covered prescription contraceptives, there would be no need now to legislatively mandate such coverage   Indeed, the federal government did not even require its own comprehensive employee benefits plans to cover prescription contraceptives until Congress voluntarily added such coverage three years ago   Likewise, where coverage has been mandated at the state level, it has been through legislation   See page 23, footnote 13, in Bartell's brief on cross-motion (4/13/01) for a list of related state legislation

**C.**   **Bartell's benefit plans treat all employees the same with regard to FAMILY PLANNING.**

Plaintiff muddies the issues in this case by mischaracterizing Bartell's benefits plans: they do not just exclude prescription contraceptives, but for _family planning_ they exclude the entire range of related drugs and treatments, regardless of whether used by men or women, or whether by an employee or a dependent.

It is undisputed that Bartell's benefit plans are consistent in excluding coverage for _family planning_, to include  in vitro fertilization, sterilization, artificial insemination, embryo transfer, fertility drugs, sexual dysfunction, impotence, and contraceptive drugs and devices.  See

DEFENDANT'S REPLY ON CROSS-MOTION FOR
SUMMARY JUDGMENT - 7
SEADOCS 102414 1

MILLER NASH LLP
ATTORNEYS AND COUNSELORS AT LAW
TELEPHONE (206) 622 8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE  WASHINGTON 98101 2352

1   Exs. 7 and 10 to Erickson Dep   They do not cover any pre-conception condition for *any* of

2   Bartell's employees *or* their dependents.  That is, no employee or dependent – male or female –

3   has any coverage for any disease, disorder, condition, etc., related to any pre-pregnancy

4   condition, or to enable or stop conception.

5           In <u>Newport News</u>, <u>supra</u>, the Supreme Court reviewed an employer's plan that

6   treated female employees differently than it treated the female dependents of male employees,

7   and held that such a difference violated the PDA.  Logically, then, when a benefit plan treats all

8   employees and their dependents the same, it does not violate the PDA.  The <u>Saks</u> court clearly

9   recognized this

10          [A]s long as both men and women receive the same benefits and are subject to the
            same exclusions under an employer's insurance policy, the policy does not
11          discriminate on the basis of sex.  Under Franklin Covey's Plan, both men and
            women are covered for certain types of infertility treatments (examples), and
12          neither men nor women may receive benefits for other types of infertility
            treatment (surgical impregnation).  *It is no answer to say that the excluded*
13          *treatments can only be performed on women, because male employees can claim*
            *infertility-related benefits for treatments performed on their wives*--and are,
14          conversely, precluded from obtaining benefits for surgical impregnation of their
            wives   *Thus, both males and females receive the same "compensation, terms,*
15          *conditions [and] privileges of employment" under the Covey Plan, as required*
            *under 42 U S C  § 2000e-2(a)(1)*   All Franklin Covey employees, male and
16          female, who see surgical impregnation as the answer to their infertility problems
            have to foot the bill
17
            If female employees of Franklin Covey, like Saks, were denied benefits for
18          surgical impregnation, but those benefits were made available to male employees
            whose wives were surgically impregnated, Title VII would come into play   It
19          does not on the facts before me  Plaintiff's claim of discrimination based on sex is
            dismissed.
20
21  <u>Saks v. Franklin Covey</u>, 117 F. Supp. 318, 328 (S.D N.Y 2000) (emphasis added)

22          Plaintiff seeks to carve out a small subset of family planning involving pre-

23  pregnancy treatments that apply only to women, and then claim that Bartell discriminates

24  because it does not cover this small subset  If, as plaintiff argues, the prevention of pregnancy

25  must be covered under the PDA when an employer's health plan covers any preventive treatment,

26  why does plaintiff only seek relief as to "reversible" contraception and not to permanent means

DEFENDANT'S REPLY ON CROSS-MOTION FOR
SUMMARY JUDGMENT - 8
SEADOCS 102414 1

1   of preventing pregnancy?  The answer must be because Bartell's plan excludes all permanent

2   means of pregnancy used by both men and women, and thus plaintiff's only hope of showing

3   "discrimination" is to narrow the focus.

4          Even this argument does not avail plaintiff, however, because the exclusion of

5   prescription contraceptives under Bartell's plan is equally applicable to both female employees

6   and to the female dependents of male employees  As a result, both male and female employees

7   are treated equally under the benefits plan  See Newport News and Saks

8   **D.    Bartell's benefit plans do not cover preventive treatment of conditions "similar" to
        nonpregnancy.**

9

10         Plaintiff argues that because Bartell provides coverage for any kind of "preventive

11  treatment" it must also cover the narrow subset of prescription contraceptives that prevent

12  pregnancy  But plaintiff ignores that Bartell's preventive benefits plans cover prevention only of

13  diseases or body malfunctions  The "preventive benefits" pertain to medical concerns such as

14  cancer screening, exams to check for hearing loss, diminished sight, etc.  Even then, not every

15  treatment that prevents a disease or body malfunction is covered.

16         No one today would argue that pregnancy is a disease or body malfunction.  To

17  the contrary, one purpose of the PDA was to attack such stereotypical notions about pregnancy.[2]

18  To get around this, plaintiff argues that because the statute contains the phrase "other persons not

19  so affected but similar in their *ability* or inability *to work*" (emphasis added), then there is no

20  intent in the PDA that these "other related medical conditions" be a disability or disorder to be

21  covered.  This argument makes no sense.

22         First, the reason for including the phrase "ability   to work" was to combat the

23  stereotype that pregnant women are unable to work for no other reason than that they were

24  ──────────────
    [2]  In her most recent brief, plaintiff asserts that the Bartell plan covers drugs used to prevent
25  benign prostatic hypertrophy, as if that condition somehow equates to preventing pregnancy.
    But benign prostatic hypertrophy is a glandular condition that causes the urinary tract to
26  malfunction – not anything like pregnancy or child birth – and the health care coverage includes
    several medical conditions suffered only by women.

DEFENDANT'S REPLY ON CROSS-MOTION FOR
SUMMARY JUDGMENT - 9
SEADOCS 102414 1

MILLER NASH LLP
ATTORNEYS AND COUNSELORS AT LAW
TELEPHONE (206) 622 8484
4400 TWO UNION SQUARE
601 UNION STREET  SEATTLE  WASHINGTON 98101 2352

1   pregnant. Such notions were hurdles to obtaining or retaining employment for women, and it is

2   clear that the PDA intended to eliminate such hurdles. if a pregnant woman is just as capable of

3   performing a particular job as man, then it is discrimination to deny her the job merely because

4   she is pregnant That is the reason for including "ability . to work" in the statute.

5          Second, as plaintiff concedes, the PDA does not require that an employer provide

6   coverage of "pregnancy, child birth, or related medical conditions" *unless* it provides coverage

7   for similar conditions not related to pregnancy or child birth   Bartell's plan provides preventive

8   care for diseases and disorders, not for healthful conditions   Bartell's plan does not, for example,

9   cover prescriptions for preventive cosmetic purposes, such as Rogaine to help to prevent hair

10  loss  (Baldness, while possibly not as socially acceptable as a full head of hair, is not a disease

11  or disorder, but is as equally healthful a condition as having hair )  Because the preventive

12  coverage in Bartell's plan applies only to diseases and disorders, even under plaintiff's theory

13  there is no discrimination for not providing contraceptives

14  **E.      Johnson Controls is not applicable in this case.**

15          Plaintiff relies on <u>Johnson Controls</u>, but as noted in defendant's moving brief,

16  <u>Johnson Controls</u> does not apply.  It concerned a work rule that purportedly sought to protect

17  unborn children by excluding all women from certain jobs that had lead exposure, thus treating

18  all women employees as potentially pregnant   The policy did not, however, exclude men from

19  these jobs despite the evidence of potential danger to a child fathered by a man exposed to lead

20  Thus, the policy explicitly differentiated between female and male employees in their eligibility

21  for jobs, creating a hurdle to employment for women and forcing them into the very choice that

22  the PDA sought to eliminate  having a child or having a job.

23          <u>Johnson Controls</u> did not involve fringe benefit plans.  It attacked a hurdle to

24  employment caused by the employer's assumption that every woman employee would be

25  pregnant – thus, it concerned discrimination on assumption of actual pregnancy.  By contrast,

26  there is no issue in our case about hurdles to employment. Further, the benefit plan offered by

DEFENDANT'S REPLY ON CROSS-MOTION FOR
SUMMARY JUDGMENT - 10
SEADOCS 102414 1

1   Bartell treats all of its employees the same because it applies to the employees and their

2   dependents, and no employee or dependent has coverage for *family planning* of any kind.

3   **F.      Newport News is applicable and demonstrates that Bartell's benefit plan is nondiscriminatory.**

4

5               Like this case, Newport News concerns benefits, not jobs. The Court held that the

6   provision of greater pregnancy benefits coverage for female employees than spouses of male

7   employees was discrimination in violation the PDA   See also the discussion of Saks, above

8   Conversely, in our case the lack of prescription benefits applies equally to female employees and

9   male employees (i e , through their wives).

10  **G.      EEOC decision not entitled to deference.**

11              Plaintiff argues in support of her original motion that this Court should defer to

12  the EEOC's December 2000 decision. Bartell disagrees, as noted earlier, and also refers the court

13  to a recent Ninth Circuit decision rejecting an argument that the court should defer to the EEOC:

14          The EEOC's current interpretation of the Act    . is entitled to no deference
        Rather than resolving an ambiguity or exercising delegated authority, it conflicts
15          with the plain language of this statute  . .

16  Weyer v  Twentieth Century Fox Film Corp , 198 F 3d 1104, 1117 (2000) (Judge Kleinfeld,

17  affirming Judge Dwyer, W D. Wash ). Bartell contends plaintiff's position herein conflicts with

18  the plain language of the PDA

19  **H.      Both disparate treatment and disparate impact claims should be dismissed.**

20              As clearly demonstrated above, Bartell's prescription benefit plan on its face is not

21  discriminatory, and summary judgment in favor of defendant should be granted.

22              Equally clearly, there can be no factual dispute that there is a disparate impact as

23  to women, as plaintiff argues, because the plan applies equally in its benefits (or lack of benefits)

24  to both male and female employees *and* their dependents. There is no set of facts or evidence or

25  testimony that alter the fact that the Bartell's plans equally impact male and female employees

26  because they include dependents.

MILLER NASH LLP
ATTORNEYS AND COUNSELORS AT LAW
TELEPHONE (206) 622 8484
4400 TWO UNION SQUARE
601 UNION STREET  SEATTLE  WASHINGTON 98101-2352

1

# V. <u>CONCLUSIONS</u>

2  Plaintiff's claims fail as a matter of law   For the foregoing reasons, The Bartell

3  Drug Company asks the court to grant its motion and dismiss both of plaintiff's claims with

4  prejudice

5  DATED this  10  day of May, 2001.

6  MILLER NASH LLP

7

8  James R. Dickens

9  James R Dickens
   WSB No  4610
   Susan K  Stahlfeld
10 WSB No. 22003

11  Attorneys for Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S REPLY ON CROSS-MOTION FOR
SUMMARY JUDGMENT - 12
SEADOCS 102414 1

MILLER NASH LLP
ATTORNEYS AND COUNSELORS AT LAW
TELEPHONE (206) 622 8484
4400 TWO UNION SQUARE
601 UNION STREET  SEATTLE  WASHINGTON  98101 2352

1    I hereby certify that I served the foregoing DEFENDANT'S REPLY ON CROSS-
2  MOTION FOR SUMMARY JUDGMENT on:

3    (VIA MESSENGER)                          (VIA MESSENGER)
     Roberta N. Riley                         Lynn Lincoln Sarko
     Planned Parenthood of Western Washington T. David Copley
4    2001 East Madison                        Gretchen Freeman Cappio
     Seattle, WA  98122-2959                  Keller Rohrback, L.L.P
5                                             1201 Third Avenue, Suite 3200
                                              Seattle, WA  98101-3052
6        Attorneys for Plaintiff

7                                                 Attorneys for Plaintiff

8    (VIA U.S. MAIL)
     Eve C. Gartner
     Donna Lee
9    Planned Parenthood Federation of America
     801 Seventh Avenue
10   New York, NY  10019

11       Attorneys for Plaintiff

12  by the following indicated method or methods:

13
    ☐   by **faxing** full, true, and correct copies thereof to the attorney at the fax number
14      shown above, which is the last-known fax number for the attorney's office, on the
        date set forth below   The receiving fax machine was operating at the time of
15      service and the transmission was properly completed

16  ☒   by **mailing** full, true, and correct copies thereof in a sealed, first-class postage-
        prepaid envelope, addressed to the attorney as shown above, the last-known office
17      address of the attorney, and deposited with the United States Postal Service at
        Seattle, Washington, on the date set forth below
18
    ☐   by sending full, true and correct copies thereof via **overnight courier** in a sealed,
19      prepaid envelope, addressed to the attorney as shown above, the last-known office
        address of the attorney, on the date set forth below.
20
21  ☒   by causing full, true and correct copies thereof to be **hand-delivered** to the
        attorney at the attorney's last-known office address listed above on the date set
        forth below

22      DATED this _10th_ day of May, 2001
23

24
                        _James R. Dickens_
25                      James R. Dickens
                        Of Attorneys for Defendant
26

Certificate of Service
SEADOCS 97217 1

MILLER NASH LLP
ATTORNEYS AND COUNSELORS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON 98101 2352